COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Benton, Coleman, Willis,
      Elder, Bray, Fitzpatrick, Annunziata and Overton
Argued at Richmond, Virginia


KHALID KARIM, S/K/A
 KHALID Y. KARIM
                                        OPINION BY
v.  Record No. 1711-94-4        JUDGE ROSEMARIE ANNUNZIATA
                                       JULY 30, 1996
COMMONWEALTH OF VIRGINIA


                   UPON A REHEARING EN BANC

        Michael J. Cassidy for appellant.

        John K. Byrum, Jr., Assistant Attorney
        General (James S. Gilmore, III, Attorney
        General, on briefs), for appellee.


     By opinion issued February 13, 1996, a panel of this Court

vacated Khalid Karim's convictions for murder and abduction and

remanded the case for further proceedings on the ground that the

statutory notice requirements concerning the initiation of

proceedings against juveniles had not been met.  Karim v.

Commonwealth, 21 Va. App. 652, 466 S.E.2d 772 (1996).  A

rehearing en banc was granted to determine whether the notice

requirements were met and whether the alleged failure to meet the

requirements created a jurisdictional defect, requiring vacation

of the convictions.[1]  We conclude the proceedings against Karim

were improperly initiated and, therefore, the juvenile court

lacked jurisdiction over the matter.  Because the juvenile court

_____
        [1]     The remaining issues resolved by the panel opinion
were not reheard en banc.

lacked jurisdiction to transfer the case to the circuit court, the circuit court did not acquire jurisdiction to hear the case. Accordingly, the order of conviction is vacated and the case is remanded.

BACKGROUND

Karim was arrested and charged with multiple offenses relating to a July 31, 1993 shooting incident in which one youth was killed and two others were wounded. On August 5, 1993, Investigator Edward R. Guckenberger filed a petition with the juvenile court asking that Karim, a juvenile, "and the persons having his or her custody and control be summoned to appear before" the juvenile court judge. Guckenberger listed a specific Alexandria address for Karim as well as a phone number. In the space for the parents' names and addresses, Guckenberger wrote "Unknown to Petitioner."

The juvenile court appointed Marlene Hahn as Karim's guardian ad litem. A summons was personally served on Karim on August 6, 1993. A copy of the petition was attached to the summons.

The juvenile court record contains an August 6, 1993 order appointing two attorneys (Cassidy and Adams) to represent Karim. The juvenile record also contains a document entitled, "Record of Proceedings." It is signed by the juvenile judge and is dated August 6, 1993. The document indicates "[t]hat Probable Cause to detain is Found," and the court ordered that Karim be held at

- 2 -

Landmark Detention Center.

On September 22, 1993, the Commonwealth's Attorney filed a notice of intent to certify Karim for trial as an adult. On October 7, 1993, the juvenile court conducted a hearing "to determine whether or not there is probable cause to believe that an offense had occurred." The record contains Karim's motion to dismiss that was filed on October 7, 1993. In that motion, he asserted that the juvenile court failed to follow the notice requirements of Code § 16.1-263.

The following dialogue took place at the October 7, 1993 hearing:

THE COURT: I just wanted to raise something. When I was going through the pleadings, I couldn't find the notice of the certification -- and I did find that. That's why -- mainly why I had the recess.

And secondly, Mr. Karim, I normally always ask before the hearing -- I think this is the first time I've never asked in all these years -- whether you had a parent here. I don't think you have a parent here.

FONTE (PROBATION OFFICER): Is your stepmom here?

KARIM (Karim): I have a stepmom, but she's not here though.

THE COURT: Your dad is living in the District of Columbia?

KARIM: Silver Spring.

THE COURT: Silver Spring, Maryland?

KARIM: Yes, sir.

THE COURT: What is your dad's name?

KARIM: Syed Karim.

THE COURT:  Syed Karim?

KARIM:  (Nodding head).

THE COURT:  Do you have any way we could contact him?

KARIM:  Yes, sir.  His work number.

THE COURT:  Could you give that to Mr. Fonte?

KARIM:  (Number given).

THE COURT:  Okay.  And is he aware of this proceeding?

KARIM:  He knows that I went to court last week.  He visited me at the Detention Home, and I told him I was going to court someday this week but I wasn't sure what the date was.

THE COURT:  Okay.  And he just decided not to come or --

KARIM:  He didn't know when the exact date was.


The hearing further revealed that Karim's mother lived in Chicago.  However, Karim advised the court that he thought his stepmother, Delta Karim, had legal custody of him.  She lived in Alexandria, Virginia, and her address and phone number were known to the probation officer.

At the conclusion of the hearing, the Court made the following finding:

THE COURT:  All right -- I'm going to go ahead and deny Mr. Cassidy's motion to strike, and I will make a finding, for probable cause purposes, that the two delinquent acts did occur.

And I'll make a finding that the requirements of 16.1-269a, section 1, 2 and

3a have been met.[2]  And I'm going to continue the case for a transfer report and transfer hearing pursuant to section C of 16.1-269.

After ordering the transfer study, the court scheduled the next hearing for December 2, 1993.  On November 12, 1993, Sean Coleman was appointed as Karim's guardian ad litem.

On November 30, 1993, Probation Officer Frank A. Fonte typed and filed a transfer study/report with the juvenile court.  The front sheet of the report contained the following information:

_____

[2]      Code § 16.1-269(A) deals with the juvenile court's decision whether to retain jurisdiction or transfer jurisdiction to a circuit court so the juvenile can be tried as an adult.  The portion of the statute cited by the juvenile judge provides:

> If a child fifteen years of age or older is charged with an offense which, if committed by an adult, could be punishable by confinement in a state correctional facility, the court shall on motion of the attorney for the Commonwealth and prior to a hearing on the merits, hold a transfer hearing and may retain jurisdiction or transfer such child for proper criminal proceedings to the appropriate circuit court having criminal jurisdiction of such offenses if committed by an adult.  Any transfer to the appropriate circuit court shall be subject to the following conditions:
> 1.  The child was fifteen or more years of age at the time of the alleged commission of the offense.
> 2.  Notice as prescribed in §§ 16.1-263 and 16.1-264 shall be given to the child and his parent, guardian, legal custodian or other person standing in loco parentis or attorney.
> 3. The court finds:
>
> a.  There is probable cause to believe that the child committed the delinquent act . . . which would be a felony if committed by an adult[.]

- 5 -

```
FATHER:   Syeed Kharim, (street address listed)
MOTHER:   Anita Kharim, Chicago, Illinois
GUARDIAN: Delta Kharim
ADDRESS:  (street address listed)
```

The record does not contain a transcript of the December 2, 1993 transfer hearing. After the hearing, at which Karim's attorney and guardian <u>ad</u> <u>litem</u> were present, the juvenile judge entered a transfer order. The judge checked boxes for the following statements on the preprinted order:

> The Court finds from the evidence presented that there is probable cause to believe the juvenile committed the delinquent act alleged.
>
> That the child was fifteen or more years of age at the time of the alleged commission of the offense; the child is competent to stand trial; and the interests of the community require that the child be placed under legal restraint or discipline.
>> the child is charged with an offense (murder, rape, robbery) for which amenability to treatment or rehabilitation as a juvenile is not a factor in this proceeding.
>
> The Court
>> TRANSFERS and so certifies the child for proper criminal proceedings to the Circuit Court.

On December 20, 1993, the grand jury indicted Karim. On January 28, 1994, Karim filed notice that he intended to argue a number of pretrial motions, including a motion to dismiss the indictment. On February 4, 1994, Karim argued his motion to dismiss. He alleged that the juvenile court never acquired jurisdiction because neither of his parents received proper notice. The trial court denied this motion.

JURISDICTION AND TRANSFER

Code § 16.1-263, governing the institution of proceedings
against a juvenile, provides in pertinent part as follows:

A.  After a petition has been filed, the
court shall direct the issuance of summonses,
one directed to the child, if the child is
twelve or more years of age, and another to
the parents, guardian, legal custodian or
other person standing in loco parentis, and
such other persons as appear to the court to
be proper or necessary parties to the
proceedings.  The summons shall require them
to appear personally before the court at the
time fixed to answer or testify as to the
allegations of the petition.  Where the
custodian is summoned and such person is not
the parent of the child in question, the
parent shall also be served with a summons.
The court may direct that other proper or
necessary parties to the proceedings be
notified of the pendency of the case, the
charge and the time and place for the
hearing.

B.  The summons shall advise the parties of
their right to counsel as provided in
§ 16.1-266.  A copy of the petition shall
accompany each summons for the initial
proceedings.  Notice of subsequent
proceedings shall be provided to all parties
in interest.  In all cases where a party is
represented by counsel and counsel has been
provided with a copy of the petition and due
notice as to time, date and place of the
hearing, such action shall be deemed due
notice to such party, unless such counsel has
notified the court that he no longer
represents such party.

*     *     *     *     *     *     *

E.  No such summons or notification shall be
required if the judge shall certify on the
record that the identity of a parent or

guardian is not reasonably ascertainable.  An affidavit of the mother that the identity of the father is not reasonably ascertainable shall be sufficient evidence of this fact, provided there is no other evidence before the court which would refute such an affidavit.

"If a party designated in § 16.1-263 A to be served with a summons can be found within the Commonwealth, the summons shall be served upon him in person."  Code § 16.1-264.  Service on one parent is sufficient in cases of delinquency.  Id.

> If a party designated to be served in § 16.1-263 is within the Commonwealth and cannot be found, but his address is known or can with reasonable diligence be ascertained, the summons may be served upon him by mailing a copy thereof by certified mail return receipt requested.  If he is without the Commonwealth but can be found or his address is known, or can with reasonable diligence be ascertained, service of summons may be made either by delivering a copy thereof to him personally or by mailing a copy thereof to him by certified mail return receipt requested.

Id.

> An important consideration in interpreting the meaning of a statute is whether it is mandatory and jurisdictional or directory and procedural.  When asked to decide whether various provisions relating to juvenile transfer proceedings are jurisdictional in nature, the Supreme Court has analyzed the provisions "to determine whether they impart a substantive right to the juvenile or merely impose a procedural requirement."  A mandatory provision in a statute is one that connotes a command and the omission of "'which renders the proceeding to which it relates illegal and void, while a directory provision is one the observance of which is not necessary to the validity of the proceeding; and a statute may be mandatory in some respects, and directory

- 8 -

in others.'"

Cheeks v. Commonwealth, 20 Va. App. 578, 582-83, 459 S.E.2d 107, 109 (1995) (citations omitted) (holding that failure to give notice denied appellant substantive right to meaningful transfer appeal hearing at which he could present further evidence on issue of transfer; also finding constitutional due process violation).

"It is clear beyond dispute that the waiver of jurisdiction [by a juvenile court] is a 'critically important' action determining vitally important statutory rights of the juvenile." Kent v. United States, 383 U.S. 541, 556 (1966) (holding that the "critically important" decision to try juvenile as adult entitles juvenile to certain procedures and benefits as a consequence of his statutory right to the "exclusive" jurisdiction of the juvenile court).

> Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must "set forth the alleged misconduct with particularity." . . . Due process of law requires notice of the sort we have described -- that is, notice which would be deemed constitutionally adequate in a civil or criminal proceeding. It does not allow a hearing to be held in which a youth's freedom and his parents' right to his custody are at stake without giving them timely notice, in advance of the hearing, of the specific issues that they must meet.

In re Gault, 387 U.S. 1, 33-34 (1967) (footnote omitted).

The provisions in the Code specifying parents of a juvenile

as proper and necessary parties who must receive notice are mandatory.  See Peyton v. French, 207 Va. 73, 79, 147 S.E.2d 739, 743 (1966) (construing former Code §§ 16.1-166, 16.1-167, and 16.1-172).  In French, petitions were filed against a juvenile defendant, and the juvenile judge transferred the case to the circuit court for the defendant to be tried as an adult.  The defendant's parents did not receive notice and were not present at the transfer hearing; a guardian ad litem had not been appointed.  The Supreme Court of Virginia stated:

> Since the [juvenile] court did not follow the mandatory requirements of Code §§ 16.1-166, 16.1-167, 16.1-172, 16.1-173 and 16.1-174, supra, the petitioner was not afforded a proper hearing under the Juvenile and Domestic Relations Court Law before being sent on to the circuit court to be indicted and tried as an adult.

Id. at 77, 147 S.E.2d at 742.  The Court held that the circuit court's order of conviction was void because the juvenile court failed to give "notice to all proper and necessary parties."  Id.  The Court refused to adopt the Commonwealth's contention "that the statutes relating to proceedings in juvenile courts are procedural and not jurisdictional."  Id.

> Code § 16.1-158 gives the juvenile court exclusive original jurisdiction over the offenses alleged to have been committed by the petitioner, and the clear purpose and intent of the Juvenile and Domestic Relations Court Law cannot be achieved if it is not mandatory that the proceedings set forth in §§ 16.1-164, 16.1-166, 16.1-167, 16.1-172, 16.1-173 and 16.1-176(a) be complied with.  Indeed, the very language of the statutes makes it mandatory that the aforesaid mentioned statutes be followed before

criminal jurisdiction in a proper court of
record comes into being.

Id. at 79, 147 S.E.2d at 743.

In Jones v. Commonwealth, 213 Va. 425, 192 S.E.2d 775 (1972), the defendant collaterally attacked a past conviction that was rendered when he was a juvenile, twenty-two years earlier. Although Jones "conceded the 'possibility' that the juvenile court [might] have appointed a lawyer for him" at the juvenile proceeding, at the hearing to attack the conviction, Jones testified "that his parents were not present and that a guardian ad litem was not appointed for him." Id. at 426-27, 192 S.E.2d at 777. The applicable juvenile statute at the time of the original prosecution was Code § 63-273 (1948); that Code section used language substantially similar to former Code § 16.1-172, found by the French Court to be mandatory. In reversing the conviction, the Court explained:

> [T]he official records of the court are completely silent as to any notification of the parents, certification by the judge as to such notification, the presence of the parents at the trial, the appointment of a probation officer or guardian ad litem to represent defendant, and the presence of either of the latter two at the trial.

Jones, 213 Va. at 427, 192 S.E.2d at 777.

The Court noted that, although "significant changes in philosophy regarding juvenile proceedings have taken place since" the defendant's original trial, "the requirement that the parents of an infant defendant charged with a crime have notification of

the time and place of his trial and an opportunity to be present has remained constant." Id. at 427-28, 192 S.E.2d at 777.

In Turner v. Commonwealth, 216 Va. 666, 222 S.E.2d 517 (1976), after a juvenile petition was filed, the juvenile defendant and the defendant's father appeared before the juvenile court for a detention hearing on October 7, 1974. On October 8, 1974, the juvenile judge appointed an attorney for the juvenile defendant, who was "'notified of [the transfer] hearing date.' The record fail[ed] to show, however, that any written notice of the time, place, and purpose of the October 24 [transfer] hearing was given the defendant, his parents, or his attorney." Id. at 667, 222 S.E.2d at 518. Turner, his attorney, and his parents were present at the transfer hearing.

Turner argued that "the circuit court lacked jurisdiction to try him because notice in writing of the transfer hearing was not given him, his parents, or his attorney." The Court noted that "the form of notice and the method of giving notice are ordinarily considered matters of procedural and not substantive due process." Id. at 668, 222 S.E.2d at 519. Because the form of the notice was procedural rather than jurisdictional, and because the parents were present at the hearing, the Court held that "any departure from" the requirement of written notice could "be cured or waived by the appearance of proper and necessary parties." Id. (emphasis added). Turner, however, is distinguishable from the present case because neither Karim's

- 12 -

parents nor legal guardian were given proper notice or were present at the hearing.

The record clearly shows that at the initiation of the proceedings on October 7, 1993, the juvenile judge knew Karim's father's Maryland address and knew that the father had recently visited his son in jail. The juvenile judge had evidence that Karim's stepmother was his guardian and knew her Virginia address. Despite having this information, the juvenile judge failed to give notice to the father or stepmother, but instead determined probable cause and ordered a transfer report.

The transfer order entered by the juvenile judge on December 2, 1993, declared that the hearing "was conducted pursuant to proper notice pursuant to Va. Code §§ 16.1-263 and 16.1-264 to the juvenile, the juvenile's parents, guardian, legal custodian or other person standing in loco parentis or attorney." However, the record fails to establish that the juvenile proceedings against Karim were properly initiated such that the court had jurisdiction to proceed with the October 7, 1993 probable cause hearing.

The record does not show that Karim's parents or legal guardian were present on October 7, 1993 or that the juvenile judge redetermined probable cause on any subsequent date. Instead, the record shows that, on December 2, 1993, the juvenile judge merely continued where he left off after the October 7, 1993 proceeding in which he found probable cause. On December 2,

1993, the court used the earlier-requested transfer report, found Karim to be nonamenable to treatment as a juvenile, and transferred jurisdiction to the circuit court. Therefore, the avowal in the December 2, 1993 order that proper notice had been given was belied by the absence of evidence that the juvenile judge attempted to excuse or correct the earlier failure to give proper notice prior to finding probable cause and transferring to the circuit court.

Based on French, Jones, and Cheeks, we find that compliance with the Code sections at issue here, relating to procedures for instituting proceedings against juveniles, are mandatory and jurisdictional. The failure to strictly follow the notice procedures contained in the Code denied Karim a substantive right and the constitutional guarantee of due process.[3]

The record failed to establish that Karim's parents or guardian, who were proper and necessary parties, were properly given notice. The juvenile judge did not certify on the record that the identity of a parent or guardian was not reasonably ascertainable. Therefore, the juvenile court did not acquire jurisdiction. Because it did not possess jurisdiction, the juvenile court lacked authority to transfer the case to the circuit court, and, consequently, the circuit court lacked

---

[3] We disagree with the Commonwealth's contention that the cases stand for the proposition that a juvenile's representation by a guardian ad litem effectively cures non-compliance with Code § 16.1-263.

jurisdiction to try Karim as an adult.  See State v. Taylor, 498 N.E.2d 211 (Ohio Ct. App. 1985) (reversing and remanding adult conviction where failure to give notice to parent of juvenile proceeding resulted in due process violation; appellate court held that juvenile court was without jurisdiction to effect transfer of jurisdiction to adult trial court).

Because the circuit court had no jurisdiction, we vacate the order of conviction and remand the case to the circuit court with instructions to remand the case to the juvenile court for further proceedings against Karim as are appropriate and consistent with this opinion, if the Commonwealth be so advised.[4]

Vacated and remanded.

---

[4] We do not hold that notice for the transfer hearing was improperly given.  Notwithstanding the provision of proper statutory notice for the transfer hearing, the juvenile and domestic relations court's failure to initiate proceedings upon proper notice in accordance with Code § 16.1-263 deprived it of jurisdiction and the attendant power to transfer the case to the circuit court.